IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

FILED by _____ D.C.

SEP - 2 2008

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

JOHN DALY ENTERPRISES, LLC, a Florida
Limited Liability Corporation, and JOHN DALY,

CASE NO.:

**08-61401**

Plaintiffs,
v.

CIV - DIMITROULEAS

/ROSENBAUM

HIPPO GOLF COMPANY, INC., a California
corporation,

Defendant.

_____/

## COMPLAINT

Plaintiffs, John Daly Enterprises, LLC ("JDE") and John Daly ("Daly"), sue Defendant, Hippo Golf Company Inc., (d/b/a Hippo Golf, Hippo Golf Inc., Hippo Florida, Hippo Golf USA, Hippo Golf Company (CA) Inc.) (collectively "Hippo Golf") a California corporation Plaintiffs hereby allege:

### Nature of the Action

1.    This action arises from the Defendant's willful infringement of JDE's common law and federal statutory trademark rights in the JOHN DALY and Design mark, the unauthorized use of John Daly's name and likeness in violation of § 504.08, Fla. Stat., and breach of contract. By this action, JDE and Daly seek: damages, treble damages, and injunctive relief for infringement of a federally registered mark under 15 U.S.C. § 1114(1); compensatory damages, treble damages and injunctive relief for false designation of origin under 15 U.S.C. § 1125(a); trademark infringement and unfair competition under Florida common law; and compensatory damages for unauthorized use of John Daly's name and likeness under § 540.08, Fla. Stat., and compensatory damages

1

for breach of contract.  In this action, the Plaintiffs also seek to hold Hippo Golf liable for a judgment entered against Hippo Holdings, Ltd., under an alter ego theory of liability.

## The Parties

2.      Plaintiff, John Daly Enterprises, LLC, is a Florida limited liability company with its principal place of business located in Florida.   At all material times, John Daly Enterprises, sold products within the jurisdiction of the Southern District of Florida.

3.      John Daly is an individual over the age of eighteen who is a resident of Tennessee.

4.      Defendant Hippo Golf is a California corporation with its principal place of business located at 2755 Dos Aarons Way, Suite A, Vista, CA 92083.  Hippo Golf acquired, by nerger, Hippo Golf Company, Inc., a Florida corporation, on or about May 15, 2002, with Hippo Golf as the surviving entity.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a). This Court has supplemental jurisdiction over the Florida State law claims under 28 U.S.C. § 1367.

6.      The Defendant is subject to the personal jurisdiction of this Court pursuant to §§ 48.193(1)(a) and (b), Fla. Stat., because it is operating, conducting, engaging in, or carrying on a business venture in this state, and because it has committed tortious acts of trademark infringement and unfair competition in this state, and sold infringing product in this state, and such causes of action arose from the foregoing acts. The Defendant is also subject to the jurisdiction of this Court under § 48.193(2), Fla. Stat., because it is

engaged in substantial and not isolated activities within this State and because it entered into a contract with Plaintiffs in this State.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including, without limitation, the Defendant marketed, distributed and sold products, including the products at issue in this lawsuit, in this District, and further, unlawfully used John Daly's name and likeness for its own financial gain in this District. Also, at times material to the events at issue in this lawsuit, Defendant maintained a business address in this District in Ft. Lauderdale, Florida and maintained a registered agent in this District in Miami, Florida.

8.      Furthermore, the parties previously participated in litigation in this Court over substantially the same claims as those asserted in the present lawsuit.  The prior litigation against Defendant was voluntarily dismissed while settlement negotiations were pursued; however, such dismissal was expressly premised upon the fact that should settlement negotiations be unsuccessful and the action need to be refiled, the filing date of such action would relate back to the date the prior litigation was filed, and the dismissal would not prejudice either party's rights to any current or future claims for attorneys' fees and costs in the event the parties were unable to resolve the action and Plaintiffs were forced to refile the action.

## GENERAL ALLEGATIONS

### John Daly and John Daly Enterprises, Inc.

9.      Daly became a professional golfer in 1987, at the age of 21. In 1991, he joined the Professional Golfers' Association of America (the "PGA"). During his career,

Daly has won five PGA Tour events and four international events. His biggest victories on the PGA Tour were the 1991 PGA Championship and the 1995 British Open Championship, two of golf's four major championships.

10. Daly has been and remains one of the most popular players on the PGA Tour.

11. In December 1999, and as a result of his popularity, Daly, along with other business partners, decided to form an entity whose purpose would be to promote, market and sell merchandise bearing Daly's name and image. That entity, John Daly Enterprises, Inc. ("JDE Inc."), operated for approximately four years, until December 31, 2003 when its assets were sold to JDE, the current branding, marketing and merchandising company of JOHN DALY branded products.

12. The primary trademark of JDE is the John Daly lion head and swing logo with the John Daly signature (the "Primary Mark"). (The Primary Mark and all variations thereof will be hereinafter referred to collectively as the "John Daly Trademarks"). The Primary Mark was registered with the United States Patent and Trademark Office on April 9, 2002 under Registration No. 2,559,785 and appears as follows:



13. Daly's signature was also registered as a separate mark on September 5, 2006 as Registration No. 3138914:



14.     Daly's Lion Head was also registered as a separate mark on January 23, 2007 as Registration No. 3200989:



15.     JDE and its predecessor extensively advertised and promoted the John Daly Trademarks in the United States and throughout the world. One of its most popular promotional tools was the introduction of a John Daly Merchandising Trailer, which was used at all tournaments and events in which Daly participated, allowing fans the opportunity to meet and greet John Daly and to purchase products bearing the John Daly Trademarks.

16.     The John Daly Trademarks are also promoted on the Internet at JDE's official website located at www.johndaly.com.

### John Daly's Relationship with Hippo/Hippo Golf

17.     Daly began his relationship with the Defendant when, on December 22, 2000, he and Hippo Holdings, Ltd. (hereinafter referred to as "Hippo" entered into an Endorsement Agreement (the "Endorsement Agreement"), pursuant to which Daly agreed to promote and endorse the Hippo branded products.  Hippo did business under other

names including Outlook Sports Holdings, Ltd., Hippo Golf, Ltd., Hippo Clothing & Footwear, Ltd., and House and Sports Far East, Ltd.

18.     The Endorsement Agreement provided that Hippo could utilize Daly's name, likeness, signature, voice, statements and endorsement solely in connection with the advertisement, promotion and sale of Hippo products but not as trademarks.

19.     In January 2002, while attending the PGA Merchandise Show in Orlando, Florida, JDE Inc. discovered that Hippo had introduced and began marketing a JOHN DALY branded club.

20.     Hippo displayed items purportedly "exclusively marketed" by Hippo in Hippo Golf's trade show booths.

21.     Hippo's product catalogs listed all products in pounds, but put the addresses of both Hippo and Hippo Golf on back of catalog.

22.     Hippo Golf entered into an agreement with Brents Riordan, LLC for the sale of Daly clubs to Wal-Mart, and asserted the right to do so derived from Daly's agreement with Hippo.

23.     Hippo Golf claimed it had right to sell Daly clubs based solely on Daly's agreement with Hippo.

24.     Accordingly, on January 24, 2002, JDE Inc. notified Hippo that it was not authorized under the Endorsement Agreement to manufacture and market a JOHN DALY branded club and that the manufacture and sale of such a product violated JDE's trademark rights.

25.     On January 29, 2002, and as a result of its trademark infringement, John Daly notified Hippo that he was terminating the Endorsement Agreement.

26.     On March 6, 2002, John Daly and Hippo entered into a Settlement Agreement whereby John Daly reinstated the Endorsement Agreement. In the Settlement Agreement, Hippo acknowledged that JDE had entered into a Trademark License Agreement (the "Cornerstone License Agreement") with Cornerstone Golf, Inc. ("Cornerstone") on October 29, 2000 and that Cornerstone had the exclusive right to sell golf clubs under certain of the John Daly Trademarks.

27.     On information and belief, all invoices for royalties for Daly products sold by Hippo Golf were paid by Hippo.

### John Daly Enterprises Permits Hippo to Sell John Daly Icon Clubs

28.     On or about July 5, 2002, John Daly, acting on the advice of his agent, and as CEO of JDE Inc., notified Hippo that Hippo could "sell the John Daly icon clubs . . . thru 2002 and 2003." Accordingly, pursuant to the July 5, 2002 letter agreement (the "Letter Agreement"), Hippo was given the limited right to sell JOHN DALY golf clubs through December 31, 2003.

29.     On February 12, 2004, consistent with the expiration of Hippo's rights, John Daly wrote to David Dixon, Chief Financial Officer of Hippo Golf, requesting that Hippo Golf "cease and desist all activity concerning the manufacture and sale of Hippo/John Daly signature merchandise and Hippo/John Daly 'Lion' branded merchandise, up to and including Golf Clubs, Golf Bags, and Golf related accessories such as gloves, bag towels, umbrellas, etc."

30.     In his February 12, 2004 letter, John Daly confirmed that Hippo's rights terminated December 31, 2003: "There shall be no rights whatsoever as to Hippo Golf to utilize the likeness, trademarks, name, signature or any other connotation bearing

similarity to John Daly and/or the John Daly 'Lion' brand and applicable trademarks effective as of January 1, 2004."

31.     Notwithstanding the termination of its rights, JDE granted Hippo a three month sell off period in which to dispose of any remaining inventory of merchandise through April 1, 2004. JDE requested a monthly update on such sales in a letter dated February 12, 2004.

32.     Neither Hippo nor Hippo Golf ever provided John Daly or JDE with any accounting information regarding sales of merchandise bearing the John Daly Trademarks during the 2004 sell off period.

33.     Hippo and Hippo Golf continued to sell merchandise bearing the John Daly Trademarks subsequent to April 1, 2004.

34.     According to the sales records of the Defendant, the amount of sales realized by Hippo through the unauthorized sale of the "John Daly" branded products subsequent to the sell-off period ending April 1, 2004 was $746,695.30.

35.     If the Defendant continues to sell merchandise bearing the John Daly Trademarks, then: (a) the public will be confused, misled and deceived as to the source or origin of the Defendants' product; (b) the distinctive value and reputation of John Daly Trademarks will be diluted, impairing the value of JDE's property; (c) Hippo/Hippo Golf will continue to unfairly benefit from the immense goodwill and commercial value enjoyed by JDE in its marks; and (d) JDE will lose substantial revenues should purchasers be dissatisfied with the Defendant's product and mistakenly associate the Defendant with JDE or John Daly.

36.    Hippo and Hippo Golf continued to sell merchandise/products bearing the John Daly trademarks and refused to discontinue using the John Daly Trademarks after receiving a written cease and desist demand letter.

## Website/Unauthorized Use of Name and Likeness

37.    In addition to its unauthorized sale of merchandise and products, Hippo Golf and/or Hippo also continued to use John Daly's name and likeness on the website, www.hippo-golf.com. Such use of the John Daly's name and likeness is unauthorized and damages John Daly.

38.    The website (www.hippo-golf.com) is common website for both Hippo and Hippo Golf, and is paid for by Hippo.

39.    During the relevant time period, John Daly could have, depending upon the circumstances, received amounts ranging from $300,000.00 per year to $600,000.00 per quarter for a commercial website endorsement.

40.    Hippo Golf and/or Hippo had direct knowledge that it did not have permission to use Daly's likeness and proceeded to do so anyway.

41.    Hippo Golf and/or Hippo knew the sell-off period had expired and yet continued to make unauthorized use of John Daly's name and likeness on its commercial website for over two (2) years to promote its products.

42.    The actions of the Defendant have required JDE and Daly to retain legal counsel to represent them in this action and are obligated to pay a reasonable fee for their services.

## **Hippo Golf And Hippo Are The Same Company**

43.     Hippo Golf was formerly a Florida corporation with its principal address at Mosley Business Park, Mosley Street, Burton-Upon-Trent, Staffordshire DE14 1DW, England.

44.     Hippo's principal address is or was Mosley Business Park, Mosley Street, Burton-Upon-Trent, Staffordshire DE14 1DW, England.

45.     Hippo Golf is the alter ego of Hippo, a United Kingdom foreign corporation with its principal place of business located in the United Kingdom.

46.     On information and belief, David Dixon moved from working for both Hippo and Hippo Golf to strictly Hippo Golf in February of 2003. Prior to that, he was CFO of Hippo, while simultaneously Treasurer and secretary of Hippo Golf.

47.     On information and belief, the Directors of Hippo during the relevant time period were Graham Jackson (managing director), Chester Hunt (CEO) and David Dixon (CFO) and the officers and directors of Hippo Golf were Chester Hunt, Graham Jackson and David Dixon.

48.     At all times material hereto, Hippo and Hippo Golf had virtually identical senior management who disregarded corporate formalities between the companies.

49.     The corporate form of Hippo was used fraudulently and/or for improper purposes as it had no substantive business purpose other than to mislead creditors and shield Hippo Golf from liability in connection with contractual and other liability. Specifically, the fraudulent and/or improper conduct of these entities included, without limitation, using Hippo and Hippo Golf to mislead Plaintiffs by utilizing Hippo to negotiate the use of the endorsement from Daly and other rights from Plaintiffs, while

operating the entities in a manner so as to direct the profits from the sale of merchandise to Hippo Golf, and shielding Hippo Golf from the contractual and other obligations owed to Plaintiffs.

50.     In addition, starting in 1998 and lasting through 2003, Hippo purchased golf clubs from China and shipped the goods to Hippo Golf to be sold by Hippo Golf. There were no formal agreements between Hippo and Hippo Golf regarding payment to Hippo for transfer of the assets, such that Hippo would negotiate and incur the expenses and obligations for the assets, while Hippo Golf, which was shielded from liability by Hippo, received the benefits.

51.     On information and belief, to promote clubs to be sold by Hippo Golf, Daly filmed an infomercial paid for by Hippo. Hippo Golf never completely paid Hippo back for the infomercial. Hippo used a dubbed version of the infomercial in Japan.

52.     Hippo Golf's officer has admitted that it assumed it had authority to sell Daly clubs based on Daly's agreement with Hippo because of the "common ownership of the companies" and Hippo Golf sold Daly clubs based on that assumption.

53.     On information and belief, there was no written agreement between Hippo and Hippo Golf for Hippo Golf to market any clubs in the US, much less a specific agreement concerning the marketing of Daly clubs.

54.     In addition, letters regarding alleged breach of agreements by Hippo Golf resulting from sales of products by Hippo Golf were sent by Hippo to Daly and/or his agents, and from Daly to Hippo.

55.     On information and belief, Hippo Golf never paid for rights to use the Hippo brand.

56.     On information and belief, all sales of Hippo clubs in the US were made through Hippo Golf.

57.     The alter ego nature of the relationship between Hippo and Hippo Golf, together with the fraudulent and/or improper use of the corporate form, caused damages to the Plaintiffs.

58.     A judgment in the amount of $2,734,842.22 has been entered in favor of the Plaintiffs against Hippo; Hippo Golf is liable for that judgment.

## COUNT I
## (INFRINGEMENT OF FEDERALLY REGISTERED MARKS)

59.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-58 above as though set forth fully herein.

60.     This is an action for infringement of federally registered trademarks under 15 U.S.C. § 1114(1).

61.     JDE is the owner of a federal trademark registrations covering the John Daly Trademarks, registered on the Principal Register of the United States Patent and Trademark Office on April 9, 2002 under registration No. 2,559,785; September 5, 2006 under Registration No. 3138914, and January 23, 2007 under Registration No. 3200989.

62.     The Defendant's use of the name JOHN DALY, the John Daly Trademarks, or any name or mark confusingly similar thereto, on products is likely to cause confusion, mistake and deception of purchasers as to source or origin of such products.

63.     As a result of the unauthorized sales by Hippo Golf, consumers are likely to purchase Hippo Golf's products believing them to be endorsed or sponsored by JDE.

64.     JDE has no control over the quality of the products offered by Hippo Golf, and because of the confusion as to source, JDE's favorable goodwill with respect to its registered mark is subject to diminution by Hippo Golf.

65.     Hippo Golf 's use of the John Daly Trademarks has caused damage to JDE and has also resulted in the diminution of the exclusive rights which JDE formerly enjoyed in connection with its registered trademark.

66.     Hippo Golf's infringement has been willful and deliberate, and designed specifically to trade upon the enormous goodwill associated with the John Daly Trademarks.

67.     The goodwill associated with the John Daly Trademarks is of enormous value and JDE has already suffered, and stands to suffer further irreparable harm should Hippo Golf's infringement be allowed to continue.

68.     Hippo Golf's infringement constitutes a violation of 15 U.S.C. § 1114(1) and will continue unless enjoined by this Court.

### COUNT II
### (FALSE DESIGNATION OF ORIGIN)

69.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-58 above as though set forth fully herein.

70.     This is an action for false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71.     Hippo Golf's use of the name JOHN DALY and the John Daly Trademarks in interstate commerce constitutes a false designation of origin and/or a false description or representation, which is likely to deceive and mislead consumers into

believing that Hippo Golf's products originate from JDE, or are otherwise affiliated with, licensed, sanctioned or endorsed by JDE.

72. Hippo Golf's false designation of origin constitutes a violation of 15 U.S.C. § 1125(a).

73. JDE has no control over the nature and quality of the product offered by Hippo Golf and any failure, neglect or default by Hippo Golf in providing its goods will and does reflect adversely on JDE as the believed source or origin thereof, hampering efforts by JDE to continue to protect its outstanding reputation for high quality goods, resulting in either a loss of sales thereof, a diminution in JDE's reputation, and the need for considerable expenditures to promote its goods under its mark, all to the irreparable harm of JDE.

## COUNT III
### (COMMON LAW TRADEMARK
INFRINGEMENT AND UNFAIR COMPETITION)

74. Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-58 above as though set forth fully herein.

75. This is an action for trademark infringement under the common law of Florida.

76. In addition to the rights arising under its federal trademark registration, JDE owns and enjoys common law rights in connection with its use of the John Daly Trademarks, which rights are superior to any rights which Hippo Golf may claim in and to such marks.

77. Hippo Golf's use of JOHN DALY name and JOHN DALY Trademarks in

connection with the sale of golf clubs and other golf related merchandise is likely to cause confusion as to source or origin, and consumers are likely to associate such goods with, and as originating from JDE.

78.     Hippo Golf's infringement has damaged JDE and will continue unless enjoined by this Court.

79.     JDE has no plain, speedy or adequate remedy at law because so long as the Hippo Golf continues to infringe on the JOHN DALY Trademarks, the public will continue to be confused and JDE will continue to sustain a loss of goodwill.

80.     Upon information and belief, Hippo Golf's infringement has been willful, wanton and gross and warrants an award of punitive damages under Ch. 768, Fla. Stat. and attorneys' fees under § 57.105, Fla. Stat.

**COUNT IV**
**(UNAUTHORIZED USE OF NAME AND LIKENESS BY**
**JOHN DALY PURSUANT TO § 540.08, FLA. STAT.)**

81.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-58 above as though set forth fully herein.

82.     Pursuant to the Endorsement Agreement, Daly granted rights to the Defendant that permitted Hippo to use his name and likeness in the marketing and promotion of golf merchandise. Any such rights granted to the Defendant under the Endorsement Agreement terminated on December 31, 2003.

83.     The Endorsement Agreement did not give Hippo the right to use Daly's name and likeness indefinitely, but instead specified a definite period of time for which Daly was compensated. That period of time terminated on December 31, 2003.

84.     Any use of Daly's name or likeness by Hippo or Hippo Golf subsequent to December 31, 2003 was unauthorized. This unauthorized use has damaged Daly.

## COUNT V

### (BREACH OF CONTRACT (JULY 5, 2002 LETTER AGREEMENT))

85.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-58 above as though set forth fully herein.

86.     On July 5, 2002 JDE entered into the Letter Agreement with the Defendant pursuant to which Hippo was authorized to sell JOHN DALY golf clubs and pay royalties on such sales to JDE.

87.     Although the Defendant made initial royalty payments based upon sales of JOHN DALY golf clubs in accordance with the Letter Agreement, these payments ceased shortly after the execution of the Letter Agreement. The Defendant has continued to sell JOHN DALY golf clubs without paying JDE the required royalties.

88.     The Defendant breached the Letter Agreement by: (1) failing to make the required royalty payments to JDE during the time period in which the Defendant had authorization to sell products; and (b) selling products bearing the JOHN DALY name following expiration of the terms of the Letter Agreement and the subsequent three month sell-off period.

89.     As of April 2, 2004, the Defendant owed at least $125,000.00 to Plaintiffs under their agreements and to date, this amount has not been paid.

90.     The Defendant also sold 9,694 "John Daly" branded "golf kits" between January 1, 2004 and January 31, 2005.

91.     Plaintiffs were to receive, as a royalty, $5.00 per golf kit, causing the amount payable to Plaintiffs to be $48,470.00.

92.     Plaintiffs have not received any portion of this royalty amount to date.

93.     During the sell-off period from January 1, 2004 to April 1, 2004, the Defendant sold "John Daly" branded products in the amount totaling $456,297.40.

94.     Plaintiffs have not received any form of payment or consideration in relation to such sales.

95.     Payment should be calculated on the basis of John Daly's average royalty rate at the time, which was approximately 5% to 7% of gross sales. Plaintiffs therefore assert that it should receive 6% of $456,297.40, which is $27,377.84.

96.     As a result of the Defendant's breaches of contract, JDE suffered damages.

## COUNT VI
## ACTION ON JUDGMENT

97.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-58 above as though set forth fully herein.

98.     On October 17, 2007, in the United States District Court, Southern District of Florida, a Default Final Judgment Re: Damages As To Hippo Holdings, Ltd. Only, was given and made by that court in favor of Plaintiffs against Defendant Hippo Holdings, Ltd., in an action in which these Plaintiffs were Plaintiffs, and Defendant Hippo Holdings, Ltd. was Defendant, for the sum of $2,734,842.22, which judgment bears interest from the date of the judgment. A true and correct copy of the judgment is attached hereto as Exhibit "A".

99.     The judgment remains wholly unpaid.  Plaintiffs are the owners of the judgment.

100.    As set forth more fully above, Hippo Golf is the alter ego of Hippo.

101.    Furthermore, the corporate form of Hippo was used fraudulently and/or for improper purposes as it had no substantive business purpose other than to mislead creditors and shield Hippo Golf from liability in connection with contractual and other liability.  Specifically, the fraudulent and/or improper conduct of these entities included, without limitation, using Hippo and Hippo Golf to mislead Plaintiffs by utilizing Hippo to negotiate the use of the endorsement from Daly and other rights from Plaintiffs, while operating the entities in a manner so as to direct the profits from the sale of merchandise to Hippo Golf, and shielding Hippo Golf from the contractual and other obligations owed to Plaintiffs.

102.    The alter ego nature of the relationship between Hippo and Hippo Golf, together with the fraudulent or improper use of the corporate form, caused damages to the Plaintiffs.

103.    As a result, Hippo Golf is liable to Plaintiffs for the judgment referenced above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs John Daly Enterprises, LLC and John Daly demand a judgment against the Defendant for the following relief:

A.      That the Court pierce the corporate veils of Hippo and Hippo Golf and permit the Plaintiffs to execute their judgment against Hippo on its alter ego, Hippo Golf;

B.     That a temporary and permanent injunction be entered restraining and enjoining Hippo Golf, its alter egos, partners, affiliates, officers, servants, agents, employees, attorneys and representatives, and each of them, and those parties acting in concert or participating with them, from using John Daly's name and likeness in any manner and using any name or mark which is confusingly similar to the John Daly Trademarks in connection with the rendering of golf products;

C.     That an accounting of profits Hippo Golf, and its alter ego, Hippo, have wrongfully obtained from their use of the John Daly name and John Daly Trademarks be ordered;

D.     That an accounting of all profits from the sale of goods by the Defendant during the time period in which the unauthorized use of John Daly's name or likeness occurred be ordered;

E.     Compensatory damages under 15 U.S.C. § 1115;

F.     Treble damages, costs and attorneys' fees under 15 U.S.C. § 1115;

G.     Compensatory damages, punitive damages, profits, attorneys' fees, costs and such other relief deemed just and proper.

> **ADAMS & REESE, LLP**
> Lydia A. Jones
> Music Row
> 901 18th Avenue South
> Nashville, TN 37212
> Telephone: 615-259-1450
> Facsimile: 615-259-1470
> *Motion to Appear Pro Hac Vice will follow*
>
> And

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Steven E. Brust
Florida Bar # 0832091
Scott S. Gallagher
Florida Bar # 0371970
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6107
Facsimile: (904) 598-6207
Attorneys for Plaintiff, John P. Daly

**%JS 44** | **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

**08-61401**
**CIV-DIMITROULEAS**
**/ROSENBAUM**

### I. (a) PLAINTIFFS
JOHN DALY ENTERPRISES, LLC, a Florida limited liability corporation and JOHN DALY

**(b)** County of Residence of First Listed Plaintiff   Orange
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Scott S. Gallagher, Esquire, Smith, Gambrell & Russell, LLP, 50 North Laura Street, Suite 2600, Jacksonville, FL 32202
(904) 598-6100

### DEFENDANTS
HIPPO GOLF COMPANY, INC., a California corporation

County of Residence of First Listed Defendant   San Diego County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)
Frederick H. L. McClure, Esq. and S. Douglas Knox, Esq.

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

FTL-08-61401-CV-DIMITROULEAS-ROSENBAUM

**FILED by _IV_ D.C.**
**SEP - 2 2008**
**STEVEN M. LARIMORE**
**CLERK U.S. DIST. CT.**
**S.D. OF FLA. - MIAMI**

### II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN   (Place an "X" in One Box Only)

☐ 1  Original Proceeding
☐ 2  Removed from State Court
☑ 3  Re-filed (see VI below)
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

**a)** Re-filed Case ☑ YES  ☐ NO          **b)** Related Cases  ☐ YES  ☐ NO

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page:)

JUDGE William J. Zloch          DOCKET NUMBER 05-61505-CIV-ZLOCH

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

15 U.S.C. Section 1125; Plaintiff seeks damages and injunctive relief for violation of Plaintiff's trademark and contractual rights

LENGTH OF TRIAL via  5-10  days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes  ☑ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD
s/ _[signature]_

DATE
August 29, 2008

**FOR OFFICE USE ONLY**
AMOUNT  350          RECEIPT #  980438          IFP