UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61401-CIV-ZLOCH

JOHN DALY ENTERPRISES, LLC,
and JOHN DALY,

       Plaintiffs,

                              **O R D E R**

vs.

HIPPO GOLF COMPANY, INC.,

       Defendant.
_____/

THIS MATTER is before the Court upon Plaintiffs' Motion For Partial Summary Judgment (DE 21). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

Plaintiffs filed this diversity action seeking redress for Defendant's breach of contract and infringement of their intellectual property rights protected by federal and state law. The instant Motion seeks summary judgment on four of the six Counts in the Complaint (DE 1). They are: Count I[1] (infringement of federally registered marks), Count IV (violation of Florida Statutes § 540.08), Count V (breach of contract), and Count VI (alter ego liability). For the reasons expressed more fully below, the Court finds that the instant Motion should be granted as to liability on Counts I, IV, and V, and denied as to Count IV and

_____

[1] Count I is erroneously referred to as "Count V" in both Plaintiffs' Motion (DE 21, p. 3) and Statement Of Undisputed Facts (DE 22, p. 1).

damages as to Counts I, IV, and V.

## I. Background

Plaintiff John Daly is a professional golfer and the principal of Plaintiff John Daly Enterprises, LLC, which owns all of Daly's intellectual property rights, including three trademarks at issue in this action: U.S. Trademark Reg. 2,559,785 (John Daly signature and Lion swing design), U.S. Trademark Reg. 3,138,914 (John Daly signature), and U.S. Trademark Reg. 3,200,989 (Lion head design). They were registered with the United States Patent and Trademark Office on April 9, 2002, September 5, 2006, and January 23, 2007, respectively.

The Parties entered into a contract for Daly to act as the principal spokesman for Hippo. See Declaration of David J. Dixon, DE 31, Ex. F. The period of the contract ran from January 1, 2001, through December 31, 2003, and guaranteed Daly $50,000 per quarter. In return, Daly would make various public appearances and display Defendant's logo on his clothing and equipment during golf tournaments. After the endorsement contract ended, Defendant displayed Daly's name and likeness on its website, noting that he formerly was affiliated with Hippo Golf. Daly gave no permission for the use of his name and likeness.

Plaintiffs and Defendant also negotiated a second contract in 2002 (hereinafter "2002 Letter Agreement") for the licensing of Daly's name, likeness, and marks to Defendant for use in the sale

of golf clubs and related equipment.[2]  Declaration of John Daly, DE 21, Ex. A, p. 14-15.  The memorandum of the 2002 Letter Agreement itself did not spell out the terms of royalty payments to be made; instead, the Parties separately negotiated the rates to be paid based on merchandise sold.  The contract period ended on December 31, 2003, but because Defendant had inventory remaining, Plaintiffs gave it until March 31, 2004, to divest itself of all John Daly-branded merchandise in its possession.  Between April 1, 2004, and January 31, 2005, Defendant continued to sell merchandise and equipment bearing John Daly's signature.  In addition, Defendant failed to make all royalty payments due under the 2002 Letter Agreement.

Plaintiffs filed suit to recover for Defendant's breach of the 2002 Letter Agreement, unauthorized use of Daly's name and likeness, and violation of their federal trademark rights.  In addition, Plaintiffs seek to recover from Defendant on a judgment they obtained several years ago against Defendant's parent company, Hippo Holdings, Ltd.[3]  As stated above, the instant Motion only

---

[2]  These facts, unless otherwise noted, are taken from Plaintiffs' Statement Of Undisputed Facts (DE 22).  Due to Defendant's total failure to comply with the requirements of Local Rule 7.5.C, the facts as stated in Plaintiffs' Statement are deemed admitted to the extent supported clearly by the record.  S.D. Fla. L.R. 7.5.D; Josendis v. Wall to Wall Residence Repairs, Inc., 606 F. Supp. 2d 1376, 1380-81 (S.D. Fla. Mar. 30, 2009).

[3]  The Parties do not consistently distinguish between Defendant and Hippo Holdings, Ltd. when referring to contractual negotiations in the past.  Thus, the Court takes their lead in

3

seeks the entry of summary judgment on four of the six counts of the Complaint.

## II. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); <u>see also</u> <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)(quotation omitted). Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

<u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991); <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir. 1991).

---

denoting who is a party to what contract.

The moving party is entitled to "judgment as a matter of law" when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof.  Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).  Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

III. Analysis

A.

Plaintiffs first move for summary judgment as to Count I of the Complaint, which alleges infringement of federally registered trademarks.  The Complaint sets forth three registrations: U.S. Trademark Reg. 2,559,785 (John Daly signature and Lion swing design), U.S. Trademark Reg. 3,138,914 (John Daly signature), and U.S. Trademark Reg. 3,200,989 (Lion head design).  DE 1, ¶¶ 12-14. Plaintiffs complain of Defendant's supposed infringement during the period of April 1, 2004, through January 31, 2005.  The latter two marks were registered after this period.  See id. ¶¶ 13 (noting registration date of September 5, 2006), 14 (noting registration date of January 23, 2007).  Therefore, any infringement during this period cannot be redressed by relief under § 32 of the Lanham Act. See 15 U.S.C. § 1114(1) (prohibiting the infringement of "a registered mark").

5

Thus, only the mark registered under U.S. Trademark Reg. 2,559,785 (hereinafter "the 385 mark") is at issue in Count I.  It is reproduced in the Complaint in the following form:



Defendant admitted to selling merchandise bearing "the John Daly Trademarks" after April 1, 2004.  DE 10, ¶ 33.  While it is unclear which particular mark was on which particular piece of merchandise when it was sold, Defendant's President and CEO David Dixon admitted in deposition testimony that Defendant continued to sell golf clubs bearing the John Daly signature after April 1, 2004.  DE 21, Ex. D, p. 202.

Infringement of a federally registered mark does not require use of the actual mark or a counterfeit thereof.  Rather, it may include only a "colorable imitation" of the mark.  15 U.S.C. § 1114(1)(a).  A mark is a colorable imitation if it "so resembles a registered mark as to be likely to cause confusion."  Id. § 1127.  A mark may thus infringe a registered mark without using the entirety of the registered mark.  In other words, "[i]t is not necessary that the alleged infringer use all aspects of the registered mark for likely confusion to result.  For example, under

the likelihood of confusion test, defendant is an infringer where it reproduces the words, but not the background design logo, of the plaintiff's registered composite mark."   4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23.76 (4th ed. 2009) (quotation omitted).

As stated above, the mark registered under U.S. Trademark Reg. 3,138,914 bears only the John Daly signature and was used on Defendant's merchandise after April 1, 2004.   The John Daly signature is a portion of the 385 mark.  Compare DE 1, ¶ 13, with id. ¶ 12.  The Court finds that use of the John Daly signature on merchandise after April 1, 2004, constitutes infringement of the 385 mark because it is a colorable imitation likely to cause confusion.  15 U.S.C. §§ 1127, 1114(1)(a).

Though liability is established, there is no evidence as to Plaintiffs' damages.   By separate Order, the Court is denying Plaintiffs' Motion To File Documents Under Seal (DE 23) and striking that evidence from the record.  Plaintiffs do not point to any other item as evidence of their damages under Count I.  See DE 21, ¶ 8.  Thus, genuine issues of material fact remain as to the question of damages caused by Defendant's infringement of the 385 mark.   Therefore, the instant Motion will be granted as to liability on Count I, with damages to be established at trial.

B.

Plaintiffs' second ground for the entry of summary judgment is

Count IV of their Complaint, which alleges the unauthorized use of Plaintiff John Daly's name and likeness.  Defendant admits that Daly's name and photograph appeared on its website after the endorsement agreement ended, but characterizes it as a fair use. It argues that Daly appears in a list with seventeen other professional golfers who, like Daly, were formerly associated with Defendant and the website so notes.  DE 30, p. 10.  In other words, Daly's name and likeness is merely a factual statement: He has used our clubs.

Florida law prohibits the display or other public "use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use."  Fla. St. § 540.08(1).

In an effort to show its fair use, Defendant included a copy of the website featuring Daly.  The website displays Daly's name and likeness under the heading "PLAYERS PREVIOUSLY ASSOCIATED WITH HIPPO."  DE 31, Ex. E, p. 2.  It shows a picture of Daly, presumably on a golf course, and states the following:

> The twice major winner and golfing superstar, John Daly, will continue to be synomous [sic] with Hippo. Renowned as the longest hitter in the professional game, Daly truly had the power of Hippo behind his game, working closely with the Hippo design teams over the years to produce some of the most technologically advanced woods to hit the golf market.

Id.  Defendant argues that its use of Daly as a player previously

8

associated with it is simply a true factual statement.  The law is clear that "[u]se of a name is not harmful simply because it is included in a publication sold for profit." Valentine v. C.B.S., Inc., 698 F.2d 430, 433 (11th Cir. 1983).

However, Daly's name and likeness are not simply included on Defendant's website.  It is rather a commercial exploitation of Daly's name and likeness to promote Defendant's golf equipment. Informing the public that Daly, the "twice major winner and golfing superstar" that he is, will continue to be synonymous with Defendant directly promotes Defendant's products.  Without his consent, that is what Fla. Stat. § 540.08 prohibits. Id.; Tyne v. Time Warner Entertainment Co., L.P., 901 So. 2d 802, 808 (Fla. 2005) (noting legislative approval of prior decisions requiring "the statute to apply to a use that directly promotes a product or service").  The Court finds that the website uses Daly's name and likeness to directly promote Defendant's equipment.  No consent was given for the use of Daly's name and likeness; thus, Plaintiff is entitled to judgment as a matter of law on the question of liability as to Count IV.

On the question of damages for Defendant's violation of Fla. Stat. § 540.08, Plaintiffs offer the Declaration of John Mascatello, Daly's agent from 2004 through 2006.  In it, he estimates the fair market value of Daly's name and likeness to be at least $300,000 per year and "in some instances" $600,000 per

quarter.  DE 21, Ex. C, ¶ 7.  While Mascatello lists Daly's victories in various golf tournaments and his rank on various golf rankings, no calculations are put forward to support these figures. Defendant points to the endorsement agreement for the period of January 1, 2001, to December 31, 2003, between Daly and Hippo Holdings, Ltd., Defendant's parent company, which guaranteed Daly at least $50,000 per quarter, which equals $200,000 per year. Declaration of David J. Dixon, DE 31, ¶ 14; id. DE 31, Ex. F, ¶ 6. While it is understandable that the royalties and endorsement fees a professional can command will fluctuate and may increase, Plaintiffs fail to counter these figures provided by Defendant. See DE 40, pp. 7-8.  Thus, the record is unclear and the Court cannot determine the value of Daly's name and likeness as a matter of law.  Therefore, the instant Motion will be granted as to liability on Count IV, with damages to be established at trial.

C.

Plaintiffs argue in their third claim for relief that they are entitled to judgment as a matter of law on Count V for Defendant's breach of contract.  The 2002 Letter Agreement, authorizing Defendant's use of Plaintiffs' trademarks on equipment sold, governed the Parties' obligations regarding the sale of John Daly branded merchandise by Defendant.  When that agreement expired, Plaintiffs agreed to give Defendant until March 31, 2004, to sell off its remaining inventory; Defendant was still required to make

10

royalty payments on these sales.  Plaintiffs claim that Defendant never made these payments.

In its Answer (DE 10), Defendant has admitted the following: as of the filing of its Answer, it had ceased making payments under the 2002 Letter Agreement; Defendant sold 9,694 John Daly branded golf kits between January 1, 2004, and January 31, 2005; Plaintiffs were owed $5.00 per kit; Plaintiffs have not received any portion of the royalty amount due; Plaintiffs have not received any form of payment or consideration in relation to Defendant's sales during the sell-off period of January 1, 2004, through March 31, 2004; and Plaintiff John Daly Enterprises, LLC has suffered damages as a result of Defendant's breaches. DE 10, ¶¶ 87, 90-94, 96.  These admissions by Defendant in its Answer are controlling.  Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."); see also United States v. Neal, 255 F.R.D. 638, 640-41 (W.D. Ark. 2008). Thus, liability is established as to Count V.

Regarding the issue of damages, the Declaration of John Mascatello states that Defendant and its parent company Hippo Holdings, Ltd. collectively owe Plaintiffs $125,000.00 in royalties. DE 21, Ex. C, ¶ 8.  Defendant, however, argues that all required royalty payments were made, and that Plaintiffs were even overpaid by $1,191.  See Declaration of David J. Dixon, DE 31, ¶ 16; id. DE 31, Ex. G.  While Defendant has admitted liability on

11

the breach of contract claim, it obviously disagrees with Plaintiffs' calculation of damages. Plaintiffs do not counter these arguments by Defendant. See generally DE 40 (omitting any argument on Count V). Thus, Plaintiffs have failed to establish their damages as a matter of law as to Count V. Therefore, the instant Motion will be granted as to liability on Count V, with damages to be established at trial.

D.

Plaintiffs' final claim is that Defendant should be held accountable under Count VI of the Complaint in the instant action for the judgment Plaintiffs obtained against Defendant's parent company in a prior action. In Case No. 05-61505-CIV-Zloch, DE 47, this Court entered its Default Final Judgment Re: Damages in the amount of $2,734,842.22 in favor of Plaintiffs and against Hippo Holdings, Ltd. The Parties agree that Hippo Holdings, Ltd. is an English company and that Defendant was at all relevant times its wholly owned subsidiary. Plaintiffs argue that Defendant should be held liable on that judgment because it and Hippo Holdings, Ltd. are merely alter egos of one another.

Florida courts have a very strict test for piercing the corporate veil to collect from a shareholder.

> The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. . . . In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used

12

> the corporation as a means of evading liability with respect to a transaction . . . [a plaintiff] cannot be heard to question the corporate existence but must confine his efforts to the remedies provided by law for satisfying his judgment <u>from the assets of the corporation</u>, if any can be found.

<u>Riley v. Fatt</u>, 47 So. 2d 769, 773 (Fla. 1950), <u>cited in</u> <u>Dania Jai Alai Palace, Inc. v. Sykes</u>, 450 So. 2d 1114, 1119-20 (Fla. 1984). Under Florida law, mere failure to observe corporate formalities alone is not enough. Rather, Florida courts require "proof of <u>deliberate</u> misuse of the corporate form——tantamount to fraud——before they will pierce the corporate veil. Thus, absent proof of fraud or ulterior motive by the shareholder, the corporate veil shall not be pierced." <u>In re Hillsborugh Holdings Corp.</u>, 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994) (citing <u>Conant v. Blunt</u>, 192 So. 481 (Fla. 1939)) (further citations omitted) (emphasis in original). What is controlling is the parent company's "subjective motivation, not the effect of [its] actions" in observing or failing to observe corporate formalities. <u>Id.</u>

Plaintiffs have not demonstrated that Defendant and Hippo Holdings, Ltd. existed as separate corporate entities for an improper purpose. In their Motion they argue, as they must, that Defendant mislead Plaintiffs by making Hippo Holdings the nominal party to the contract and the holder of debt and other obligations, while Defendant enjoyed the revenues. DE 21, ¶ 44. For this proposition, they cite only paragraphs 38 and 39 of their Statement Of Undisputed Facts (DE 22). Those paragraphs read as follows:

> 38. Defendant sold millions of dollars of John Daly trademarked merchandise. . . . . All of the revenues from Hippo products sold in North America and South America were paid to Defendant. . . . .

> 39. Defendant does not know the percentage of the debt actually paid from Defendant to Hippo Holdings nor is Defendant aware if records still exist to reflect the amounts paid.

DE 22, ¶¶ 38-39.  These paragraphs lend no support for the proposition that Defendant and Hippo Holdings operated or failed to observe their separate corporate identities for the <u>purpose</u> of injuring Plaintiffs.  They say only that Defendant made a lot of money in the relevant transactions and that it fails to keep good records.  That is not enough.  <u>Dania Jai Alai Palace</u>, 450 So. 2d at 1119-20; <u>In re Hillsborugh Holdings Corp.</u>, 166 B.R. at 469.

IV. <u>Conclusion</u>

Therefore, based on the foregoing analysis, the Court finds that Plaintiffs have failed to establish their damages as a matter of law as to Counts I, IV, and V, but they have established that they are entitled to judgment as a matter of law as to liability regarding those Counts.  Moreover, Plaintiffs have failed to establish that they are entitled to judgment as a matter of law as to Count VI.  Thus, the instant Motion (DE 21) shall be granted in part and denied in part.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion For Partial Summary Judgment (DE 21) be and the same is hereby **GRANTED** in part

14

and **DENIED** in part, as follows:

1. To the extent Plaintiffs' Motion For Partial Summary Judgment (DE 21) seeks the entry of summary judgment as to liability on Counts I, IV, and V of the Complaint, it be and the same is hereby **GRANTED**;

2. The Court finds that genuine issues of material fact remain on the question of damages as to Counts I, IV, and V, and the instant Motion is **DENIED** as to the same; and

3. To the extent Plaintiffs' Motion For Partial Summary Judgment (DE 21) seeks the entry of summary judgment as to Count IV of the Complaint, it be and the same is hereby **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___13th___ day of August, 2009.


_____
WILLIAM J. ZLOCH
United States District Judge


Copies furnished:

All Counsel of Record

15